1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 MARIA CONCEPCION NIETO DE GIANINI, | Case No. 1:21-cv-00416-CDB (SS) |
| 12 Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. §405(g) |
| 13 v. | |
| 14 COMMISSIONER OF SOCIAL SECURITY,[1] | |
| 15 | |
| 16 Defendant. | (Doc. 18) |
| 17 | |

18        Plaintiff Maria Concepcion Nieto de Gianini ("Plaintiff") seeks judicial review of a final

19 decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her

20 application for disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently

21 before the Court on the Administrative Record ("AR") and the parties' briefs, which were submitted

22 without oral argument.  (Docs. 12, 18, 21).[2]  The Court finds and rules as follows.

23 _____

24        [1] On February 19, 2025, Lee Dudek was named Acting Commissioner of the Social Security
Administration.   *See*  https://www.ssa.gov/news/press/releases/2025/#2025-02-19  (last  visited
25 March 12, 2025).  He therefore is substituted as the Defendant in this action.  *See* 42 U.S.C. §
405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding
26 the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

27        [2] On April 26, 2021, after both parties consented to the jurisdiction of a magistrate judge
for all further proceedings in this action, including trial and entry of judgment, the matter was
28 reassigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 10).

I. **BACKGROUND**

   A. **Administrative Proceedings and ALJ's Decision**

On June 9, 2017, Plaintiff applied for Supplemental Security Income (SSI) with an alleged onset date of June 28, 2016. (Doc. 18 at 6); (Doc. 21 at 5); (AR 34, 225-34). Plaintiff's claim was initially denied on September 29, 2017, and again upon reconsideration on February 1, 2018. (AR 167-71, 174-78). Plaintiff requested a hearing before an Administrative Law Judge on February 20, 2018. (AR 179-80). Jennifer B. Millington, the Administrative Law Judge ("ALJ"), held a video hearing on November 4, 2019, where Plaintiff testified with the assistance of non-attorney representative Malinda Davies and a Spanish language interpreter. (AR 8-15, 52-72). Impartial vocational expert Pat Pauline also testified at the hearing. (AR 69-71). At the hearing, Plaintiff amended her alleged onset date to June 9, 2017. (AR 34). The ALJ issued an unfavorable decision on December 9, 2019, finding Plaintiff was not disabled. (AR 31-52). The Appeals Council denied Plaintiff's request for review on June 3, 2020, rendering the ALJ's decision as the final decision of the Commissioner. (AR 5-12, 222-24). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by C.F.R. § 404.1520(a). (AR 36). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 9, 2017, the alleged onset date and application date. (AR 37). Because Plaintiff had a prior decision from an ALJ finding that she was not disabled, the ALJ considered the implications of that prior decision pursuant to Acquiescence Ruling 97-4(9) and *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). (AR 34). The ALJ found pursuant to *Chavez* that there is new and material evidence supporting a change in Plaintiff's work activity, so the prior finding was not adopted. The ALJ found that Plaintiff worked after the application date but this work did not rise to the level of substantial gainful activity. (AR 37).

At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis of both knees; chondromalacia patella; migraine headaches; asthma; and multilevel degenerative disc disease of the spine. (AR 38). The ALJ determined that Plaintiff's medically determinable impairments ("MDIs") significantly limit her ability to perform basic work activities

1   as required by Social Security Ruling ("SSR") 85-28.  (AR 38).  Considering the record evidence,

2   the ALJ determined that Plaintiff's asthma is not a severe impairment under SSR 85-25 because it

3   did not more than minimally limit her ability to perform work-related activities.  (AR 38) (citing

4   B1F, B3F, B8F, B16F, B19F).  Further, the ALJ determined that because Plaintiff's elastofibromas,

5   status post excision, caused no more than mild limitations in her ability to work, they are not severe

6   impairments.  (*Id.*) (citing B1F, B6F, B9F, B16F, B18F, B19F).

7       The ALJ noted she considered all complaints of back pain and associated symptoms, and

8   all of Plaintiff's MDIs, including those that are not severe, in assessing Plaintiff's residual

9   functioning capacity ("RFC").  (AR 38).  The ALJ found that Plaintiff's mental MDIs of post-

10  traumatic stress disorder (PTSD), anxiety disorder, and major depressive disorder, considered

11  singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to

12  perform basic mental work activities and are therefore non-severe.  In making this finding, the ALJ

13  considered whether the four broad functional areas of mental functioning listed in the "paragraph

14  B" criteria are satisfied. [3]  (AR 39).  As to understanding, remembering or applying information,

15  the ALJ found that Plaintiff has a mild limitation.  As to interacting with others, the ALJ found that

16  Plaintiff has a mild limitation.  As to concentrating, persisting or maintaining pace, the ALJ found

17  that Plaintiff has a mild limitation.  As to adapting or managing oneself, the ALJ found that Plaintiff

18  has a mild limitation.  Because these mental impairments do not cause at least two "marked"

19

20      [3] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas

21  of functioning: (1) understanding, remembering, or applying information; (2) interacting with
    others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

22  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the
    four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or

23  "extreme."  (*Id.*).  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation
    in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the

24  areas of mental functioning.  (*Id.*).  An "extreme" limitation is the inability to function
    independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "marked" limitation

25  is a seriously limited ability to function independently, appropriately, or effectively, and on a
    sustained basis.  (*Id.*).  A "moderate" degree of mental limitation means that functioning in this area

26  independently, appropriately, effectively, and on a sustained basis is "fair."  (*Id.*)  And a "mild"
    degree of mental limitation means that functioning in this area independently, appropriately,

27  effectively, and on a sustained basis is "slightly limited."  (*Id.*); *see Carlos v. Comm'r of Soc. Sec.*,

28  No. 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1    limitations or one "extreme" limitation, the ALJ determined that the "paragraph B" criteria are not

2    satisfied.  (AR 40).

3        At step three, the ALJ found that Plaintiff does not have an impairment or combination of

4    impairments that meets or medically equals the severity of one of the listed impairments in 20

5    C.F.R. Part 404, Subpart P, Appendix 1.  (AR 40-41).  The ALJ discussed the reasoning as to why

6    each impairment failed to meet the requirements of the listings.  (AR 40-41).

7        Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined

8    in 20 C.F.R. 416.967(b) except she can only frequently climb ramps and stairs, balance, kneel,

9    crouch, and crawl, and can only occasionally push and pull or reach above shoulder level bilaterally.

10    (AR 41).  In considering Plaintiff's symptoms and the extent to which these symptoms can

11    reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ

12    noted she followed the two-step process as set forth in the 20 C.F.R. 416.929, and Social Security

13    Ruling ("SSR") 16-3p and considered the medical opinion(s) and prior administrative medical

14    finding(s) in accordance with 20 C.F.R. 416.920c.  First, the ALJ determined whether there is an

15    underlying medically determinable physical or mental impairment, *i.e.*, an impairment or

16    impairments that can be shown by medically acceptable clinical or laboratory diagnostic techniques

17    that could reasonably be expected to produce Plaintiff's symptoms.  Second, the ALJ evaluated the

18    intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which

19    they limit Plaintiff's work-related activities.  For this purpose, whenever statements about the

20    intensity, persistence, or functionally limiting effects of symptoms are not substantiated by

21    objective medical evidence, the ALJ considered other evidence in the record to determine if

22    Plaintiff's symptoms limit the ability to do work-related activities.  (AR 41).

23        The ALJ then discussed her findings regarding Plaintiff's physical and mental impairments,

24    considering Plaintiff's hearing testimony, medical evidence, treatment history, activities of daily

25    living ("ADLs"), and medical opinion evidence.  (AR 41-46).  After summarizing the medical

26    evidence, the ALJ found that Plaintiff's impairments could reasonably be expected to cause some

27    of her alleged symptoms but the intensity, persistence, and limiting effects of those symptoms were

28    not consistent with the medical evidence in the record.  (AR 42).

1    The ALJ reasoned as follows:

2    [Plaintiff] regularly suffered back, neck, and knee pain, which worsened with
     movements including lifting and prolonged standing, walking, or sitting.
3    Therefore, [she] would be limited to light exertional work.  Moreover, [Plaintiff's]
     back and knee pain would limit her to only frequently kneeling, crouching, and
4    crawling, frequently climbing ramps or stairs, but occasionally bending, stooping,
     or climbing ladders, ropes, or scaffolds.  Additionally, to avoid exacerbating her
5    neck and shoulder pain, [she] should only occasionally reach overhead or push
     and/or pull bilaterally.  Additionally, [her] postural limitations would help avoid
6    exacerbating her migraines, and her limitations on climbing address her intermittent
7    dizziness with migraines.

8    [She] would not require more restrictive limitations, however.  For example, [she]
     was able to climb stairs when using railings and had grossly normal balance.  In
9    addition, she was observed to be able to stand from a seated position and get onto
     and off of an examination table.  [She] also maintained a normal gait and station,
10   and she did not ambulate with an assistive device.

11   Moreover, [she] had grossly normal ranges of motion in her back, neck, and
     bilateral upper and lower extremities.  Similarly, her hands and fingers also had
12   normal ranges of motion and she had good hand coordination.  She was also able
13   to make a fist.  [She] also had normal muscle bulk and tone with grossly normal
     strength.  For example, during 2017, [she] reported that she was able to lift two
14   grocery bags and sit or stoop without problem.  [She] also maintained normal motor
     and sensory function.  Overall, [she] regularly appeared to be in no acute distress.
15   This is consistent with her testimony that her medications helped lessen her
     physical pain, but it would not go away so she would be limited to the above-
16   described residual functional capacity.

17   [Her] activities of daily living are also consistent with her residual functional
     capacity.  For example, [she] was able to do her own cooking and cleaning, as well
18   as drive, shop, and perform her personal care activities.  She reported that she would
     do such activities more slowly, but she preferred to be independent and no one
19   helped her around the house.  However, her daughter would help her lift heavier
20   groceries, like large containers of water.

21   (AR 43) (citations omitted).

22       After summarizing the medical evidence of record regarding Plaintiff's symptoms and

23   impairments (AR 41-43), the ALJ turned to the medical opinions and prior administrative medical

24   findings of record.  The ALJ found the prior administrative findings of disability determinatives

25   services consultants K. Mohan, M.D. and S. Garcia, M.D. to be mostly persuasive as to Plaintiff's

26   physical impairments.  In support, the ALJ noted that though Plaintiff experienced back, neck, and

27   knee pain, which worsened with movements including lifting and bending, she had grossly normal

28   strength and grossly normal ranges of motion in her back, neck, and bilateral upper and lower

1    extremities, and was therefore limited to light exertional work but she could frequently kneel,

2    crouch, and crawl, but only occasionally reach overhead.  (AR 44) (citations omitted).

3         Emmanuel Fabella, M.D. evaluated Plaintiff and opined that: Plaintiff could lift and carry

4    20 pounds occasionally and ten pounds frequently, stand and walk for four hours; was not limited

5    as to sitting; could occasionally climb, balance, and kneel, but should avoid climbing ladders or

6    working at heights; and that she should avoid exposure to cold.  (AR 44) (citations omitted).  The

7    ALJ found the administrative findings of evaluating physician Dr. Fabella less persuasive because

8    it is not fully consistent with the record evidence.  In support, the ALJ noted that Plaintiff: had

9    normal gait and station; did not ambulate with an assistive device; had grossly normal strength,

10   including in her lower extremities; was able to climb stairs when using railings and gad grossly

11   normal balance; and she therefore could stand and walk for up to six hours and frequently climb

12   stairs and ramps, balance, kneel, and occasionally climb ladders.  (AR 44) (citations omitted).  The

13   ALJ further discounted Dr. Fabella's opinion because Dr. Fabella was able to review Plaintiff's

14   diagnostic imaging but was unable to review her other medical records, and therefore found it not

15   fully supported by Plaintiff's longitudinal functioning, and the opinion was not fully supported by

16   Dr. Fabella's examination notes, which include findings of normal strength and ranges of motion.

17   (AR 44).

18       The ALJ found that the administrative findings of physician assistant David J. Oberst, P.A.

19   not persuasive, finding it is intended to be temporary in nature during Plaintiff's recovery from

20   surgery and is not reflective of Plaintiff's functioning over the entire period at issue, and the opinion

21   is not supported by Mr. Oberst's own treatment notes.  (AR 45).  In support, the ALJ noted Plaintiff

22   had normal muscle bulk and tone with grossly normal strength, maintained normal motor and

23   sensory function, and she therefore could lift and carry light exertional movements.  (AR 45).  The

24   ALJ found the administrative findings of evaluating physician Robert Wagner, M.D. only

25   somewhat persuasive because it is generally inconsistent with the record evidence.  The ALJ noted

26   that though Plaintiff experienced back, neck, and knee pain which worsened with movements

27   including lifting and bending, she should only perform light exertional work with postural

28   limitations and should only occasionally reach overhead or push and pull with her bilateral

1    extremities.  The ALJ further found Dr. Wagner's opinion was not fully supported by examination

2    notes which include a finding of both neck and low back strains and that Dr. Wagner did not indicate

3    whether he was able to review Plaintiff's other medical records.  (AR 45).

4         The ALJ noted that the record includes a number of reports from various physicians and

5    psychologists who examined or treated Plaintiff exclusively in connection with her remote work

6    injury and found them neither valuable nor persuasive under 20 C.F.R. 416.920b(c)(3).  (AR 45).

7    The ALJ determined that the RFC limitations assessed are supported by the objective medical

8    evidence, including Plaintiff's positive response to conservative treatment, her ADLs, and the

9    persuasiveness of the medical opinions.  (AR 46).

10        At step four, the ALJ determined that Plaintiff is capable of performing past relevant work

11   (PRW) as a housekeeper as it is generally performed because this work does not require the

12   performance of work-related activities precluded by Plaintiff's RFC and she performed the work at

13   substantial gainful activity.  (AR 46).  The ALJ found that Plaintiff worked as a housekeeper in a

14   hotel from October 2014 to June 2016, satisfying the recency requirement of PRW and the

15   durational requirement for a Specific Vocational Preparation rating (SVP) of 2 position.  However,

16   the ALJ could not determine Plaintiff could undertake her PRW as actually performed.  The

17   vocational expert testified that Plaintiff would be able to perform this PRW within the RFC.  The

18   ALJ noted that the vocational expert did not specify any portions of her testimony that contradicted

19   with the Dictionary of Occupational Titles (DOT) and the ALJ therefore accepted the testimony in

20   accordance with SSR 00-4p.  The ALJ noted that the DOT does not differentiate between directions

21   of reaching, and although the DOT lists housekeeping as requiring frequent reaching, the ALJ did

22   not find it inconsistent with the limitation to only occasional overhead reaching.  (AR 46-47).  The

23   ALJ therefore concluded a finding of non-disability under 20 C.F.R. § 416.920(f).  (AR 47).

24        After the Appeals Council denied review, Plaintiff initiated this action and ultimately filed

25   the instant motion for summary judgment on February 28, 2022.  (Doc. 18).  Defendant filed an

26   opposition on May 4, 2022.  (Doc. 21).

27        **B.    Medical Record and Hearing Testimony**

28        The relevant hearing testimony and medical record were reviewed by the Court and will be

referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." (*Id*.) (quotation and citation omitted).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Healy v. Astrue*, 379 Fed. Appx. 643, 645 (9th Cir. 2010).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. (*Id.*).

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. (*Id.*).  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." (*Id*). (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the

1    claimant's impairment must be "of such severity that he is not only unable to do his previous

2    work[,] but cannot, considering his age, education, and work experience, engage in any other kind

3    of substantial gainful work which exists in the national economy." 42 U.S.C. §

4    1382c(a)(3)(B).

5        The Commissioner has established a five-step sequential analysis to determine whether a

6    claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the

7    Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant

8    is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

9    disabled. 20 C.F.R. § 416.920(b).

10        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

11   two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R.

12   § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments

13   which significantly limits [his or her] physical or mental ability to do basic work activities," the

14   analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not

15   satisfy this severity threshold, however, the Commissioner must find that the claimant is not

16   disabled. (*Id.*).

17        At step three, the Commissioner compares the claimant's impairment to impairments

18   recognized by the Commissioner to be so severe as to preclude a person from engaging in

19   substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more

20   severe than one of the enumerated impairments, the Commissioner must find the claimant disabled

21   and award benefits. 20 C.F.R. § 416.920(d).

22        If the severity of the claimant's impairment does not meet or exceed the severity of the

23   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

24   functional capacity," defined generally as the claimant's ability to perform physical and mental

25   work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

26        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

27   claimant is capable of performing work that he or she has performed in the past (past relevant

28   work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work,

9

1    the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the

2    claimant is incapable of performing such work, the analysis proceeds to step five.

3           At step five, the Commissioner considers whether, in view of the claimant's RFC, the

4    claimant is capable of performing other work in the national economy.  20 C.F.R. §

5    416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

6    factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is

7    capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20

8    C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

9    concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  (*Id.*).

10          The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

11   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

12   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

13   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

14   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

15   **III.    ISSUES AND ANALYSIS**

16          Plaintiff seeks judicial review of the Commissioner's final decision denying her application

17   and raises the following issues:

18          1.   Substantial evidence does not support the ALJ's rejection of examining physician Dr.

19               Fabella's RFC limitation to four hours standing;

20          2.   Substantial evidence does not support the ALJ's physical RFC limitation regarding

21               reaching, lifting, pushing, pulling, and carrying;

22          3.   The ALJ harmfully erred by failing to identify and resolve an apparent conflict between

23               the DOT and VE testimony per SSR 00-4p; and

24          4.   The ALJ harmfully erred by failing to find MDIs of mental impairments to be not

25               "severe" impairments at Step Two.

26   *See* (Doc. 18 at 6).  The Court addresses the issues in turn below.

27   ///

28

1    **A.    Whether Substantial Evidence Supports the ALJ's Rejection of Examining**

2    **Physician Dr. Fabella's RFC Limitation to Four Hours Standing**

3    *1.    Governing Authority*

4    Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the

5    agency's current regulations governing an ALJ's evaluation of medical opinions.  20 C.F.R. §

6    416.920c.  Under the regulations, the Commissioner does "not defer or give any specific evidentiary

7    weight, including controlling weight, to any medical opinion(s) or prior administrative medical

8    findings (s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a),

9    416.920c(a).  Thus, the regulations require an ALJ to apply the same factors to all medical sources

10   when considering medical opinions and no longer mandate particularized procedures that the ALJ

11   must follow in considering opinions from treating sources.  *See* 20 C.F.R. § 404.1520c(b) (the ALJ

12   "is not required to articulate how [he] considered each medical opinion or prior administrative

13   medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675

14   (9th Cir. 2017).

15   Instead, "[w]hen a medical source provides one or more medical opinions or prior

16   administrative medical findings, [the ALJ] will consider those medical opinions or prior

17   administrative medical findings from that medical source together using" the following factors: (1)

18   supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other

19   factors that "tend to support or contradict a medical opinion or prior administrative medical

20   finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).  The most important factors to be applied in

21   evaluating the persuasiveness of medical opinions and prior administrative medical findings are

22   supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

23   factor, the regulation provides that the "more relevant the objective medical evidence and

24   supporting explanations presented by a medical source are to support his or her medical opinion(s),

25   the more persuasive the medical opinions ... will be."  20 C.F.R. § 404.1520c(c)(1).  In other words,

26   "[s]upportability means the extent to which a medical source supports the medical opinion by

27   explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92

28   (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more

1   consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical

2   sources in the claim, the more persuasive the medical opinion(s) ... will be."   20 C.F.R. §

3   404.1520c(c)(2).

4       The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a

5   prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The

6   ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors],"

7   except when deciding among differing yet equally persuasive opinions or findings on the same

8   issue.  20 C.F.R. § 404.1520c(b)(2)-(3).  Further, the ALJ is "not required to articulate how [he]

9   considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, the Court

10   must determine whether the ALJ adequately explained how he considered the supportability and

11   consistency factors relative to medical opinions and whether the reasons were free from legal error

12   and supported by substantial evidence.  *Woods*, 32 F.4th at 792-93.

13           *2.      Dr. Fabella's Opinion*

14       On September 5, 2017, Plaintiff attended an internal medicine consultative evaluation with

15   Dr. Fabella, an internal medicine physician with the Department of Social Services.  (AR 44, 445-

16   50) (citations omitted).  Dr. Fabella reported Plaintiff's history of present illness: she is a 55-year-

17   old female with diffuse arthralgias that had been progressive since 2001; she has posterior neck

18   pain described as dull and sharp, occasional to frequent, and varying in intensity from mild to severe

19   depending on the activity, and nonradiating; she has some pain and popping of the left shoulder

20   blade with movement, right lower back pain, bilateral knee pains and elbow pains of similar

21   character but of less severity; her knees particularly hurt when she goes up and down stairs; she can

22   now only walk ten minutes straight at a time without stopping and can lift two grocery bags; she

23   has no problem with sitting or stooping; and she told that she has osteoarthritis by Adventist Health

24   Clinic.  (AR 445).  Dr. Fabella noted that "[t]he only medical record available for [his] review is a

25   cervical spine x-ray demonstrating multilevel degenerative joint disease and disc disease."  (*Id.*).

26       Dr. Fabella made the following findings through the physical examination: Plaintiff is able

27   to generate 12 pounds of force in either hand; her gait is characterized by mild stooping but is

28   otherwise normal; she does not require the use of assistive devices for ambulation; she is able to

1   walk on her toes and heels with mild difficulty; examination of the cervical spine shows

2   paracervical muscle spasm and decreased range of motion with bilateral flexion to 35 degrees and

3   left lateral rotation decreased to 50 degrees, and negative for Spurling's sign; examination of the

4   back shows mild protuberance of medial edge of the left scapula, suggestive of mild scapular

5   winging (which may be secondary to muscle dysfunction; examination of the lower back shows no

6   spinal or paraspinal tenderness, intact range of motion with forward flexion of 90 degrees achieved

7   and negative straight leg raising test. (AR 448). As to the upper extremities (*i.e.*, shoulders, elbows,

8   wrists, and hands), Dr. Fabella reported Plaintiff had range of motion that is grossly within normal

9   limits bilaterally. (*Id.*). As to the lower extremities, Dr. Fabella reported that Plaintiff has range of

10  motion of the hips and ankles grossly within normal limits bilaterally, and examination of the knees

11  shows no effusion but there is mild to moderate grinding crepitus in both knees and some decrease

12  in range of motion with flexion limited to 95 degrees. (*Id.*). Dr. Fabella reported Plaintiff had

13  normal bulk and tone without atrophy, and normal strength without focal motor deficits. (*Id.*).

14      Dr. Fabella made the following impressions: cervicalgia with decreased range of motion

15  and paracervical muscle spasm with x-ray showing multilevel DJD and DDD; examination findings

16  consistent with mild left scapular winging (Plaintiff is undergoing x-ray and MRI ordered by her

17  primary care provider); low back pain and intact range of motion and no evidence of neurologic

18  compromise, probably secondary to DJD; and bilateral knee pains with decreased range of motion

19  and grinding crepitus probably secondary to DJD. (AR 449).

20      Thus, Dr. Fabella assessed the following physical limitations: Plaintiff could lift and carry

21  20 pounds occasionally and ten pounds frequently, limited due to back and knee pains; she could

22  walk and stand for four hours out of an eight-hour day secondary to back and knee pains; she has

23  no restrictions with sitting; she did not need an assistive device; she is able to climb, balance, kneel,

24  or crawl only occasionally secondary to back and knee pains; she is able to walk on uneven terrain

25  occasionally but climbing ladders and working at heights is best avoided due to back and knee

26  pains; and she should avoid cold exposure due to DJD. (*Id.*). Dr. Fabella disclaimed that her

27  "conclusions relate to an internal medicine assessment of alleged disability" and "should not be

28  misconstrued as a complete physical examination for general medical purposes" and the "findings

13

1   on physical examination are based both on formal testing, as well as by direct observation of

2   [Plaintiff]." (AR 450).

3                    *3.     Parties' Contentions*

4          Plaintiff argues that the ALJ erred in finding that Plaintiff could stand and walk for up to

5   six hours and frequently climb stairs and ramps, balance, and kneel, and occasionally climb ladders,

6   where the ALJ failed to consider the evidence as a whole including evidence from Dr. Fabella and

7   other record evidence that documented Plaintiff's limitations to her ability to stand and walk based

8   on her spine and knee impairments. (Doc. 18 at 13). Specifically, Plaintiff contends the ALJ

9   improperly rejected Dr. Fabella's RFC limitation to four hours of walking in failing to discuss the

10  examination findings of Plaintiff's limitations with standing and walking and by "cherry pick[ing]

11  findings in the record absent any discussion of their relevance or significance[.]" (*Id.*). Plaintiff

12  contends the ALJ failed to discuss the significance of the cherry-picked findings which are not at

13  issue, including with regard to Plaintiff's normal gait and balance, lack of need for an assistive

14  device, "ability to climb[] stairs with the use of a handrail[,]" or her "grossly normal strength" and

15  "normal muscle bulk and tone[.]" (*Id.* at 14, 15). Plaintiff therefore argues that the ALJ erred by

16  cherry-picking facts and failing to link those facts when resolving the medical opinions in the

17  record. (*Id.* at 18).

18         Defendant contends that the ALJ properly concluded the opinion of Dr. Fabella was

19  unpersuasive because the ALJ considered the inconsistencies between Dr. Fabella's report and

20  other medical evidence. (Doc. 21 at 28). Defendant contends the ALJ "highlighted some of the

21  normal examination findings" such as normal gait, station, and strength that contrasted with the

22  observations of Dr. Fabella. (*Id.*). Second, Defendant contends the ALJ observed that Dr. Fabella's

23  opinion was not fully supported by his own examination as the opinion "documented no more than

24  mild gait abnormalities, no balance difficulties, and no loss of lower extremity streng[th] supportive

25  with an inability to stand and/or walk for six hours during an eight-hour day[.]" (*Id.* at 29). Third,

26  Defendant contends the ALJ properly discounted Dr. Fabella's opinion because Dr. Fabella

27  reviewed a cervical spine x-ray record that "was dated prior to the alleged onset date of disability"

28  and "the doctor did not have access to later records[.]" (*Id.*). Fourth, Defendant contends the ALJ,

in reading the decision as whole, evaluated and found persuasive other opinion evidence that found "Plaintiff could stand and/or walk for six hours during an eight-hour workday rather than only four hours as was proposed by Dr. Fabella." (*Id.*).

### 4.    Analysis

As to supportability, the ALJ found Dr. Fabella's opinion was not fully supported because: (1) though Dr. Fabella was able to review Plaintiff's diagnostic imaging, he was unable to review her other medical records, and thus the opinion is not supported by Plaintiff's longitudinal functioning; and (2) Dr. Fabella's examination notes, which include findings of normal strength and ranges of motion, do not fully support the opinion. (AR 44).

As Plaintiff correctly argues, the ALJ failed to discuss the significance or relevance of "cherry-picked" findings that are not at issue in determining whether Plaintiff is limited to standing and walking for only four hours, including findings as to Plaintiff's normal gait, balance, "grossly normal" strength, while failing to consider other findings that support Dr. Fabella's assessed limitations. *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry-pick" from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety). Specifically, the ALJ failed to discuss Dr. Fabella's findings as to Plaintiff's "mild to moderate" knee pain and decreased range of motion which inextricably affect a person's ability to sustain standing and walking, while failing to explain how normal findings in gait and balance are proper reasons to find Dr. Fabella's opinion less persuasive. *See Gonzales v. Kijakazi*, No. 1:20-cv-1530-SKO, 2022 WL 267438, at *12 (E.D. Cal. Jan. 28, 2022) ("[C]urrent Ninth Circuit law prohibit[s] cherry-picking and requir[es] a detailed and thorough summary of conflicting evidence, and an interpretation of findings thereon, [and] the ALJ must explicitly address evidence that supports and is consistent with a less-than persuasive medical opinion[], and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons."). However, the Court finds that the ALJ appropriately determined that Dr. Fabella's opinion was not supported by Plaintiff's longitudinal functioning because "[t]he only medical record available for [his] review [was] a cervical spine x-ray demonstrating multilevel degenerative joint disease and disc disease" (AR 445), and Dr. Fabella therefore did not have other relevant, objective medical evidence to

1    explain and otherwise "support his … medical opinion(s)" such that the ALJ could find the opinion

2    persuasive.  20 C.F.R. § 416.920c(c)(1); *see Woods*, 32 F.4th at 791-92.  Thus, the ALJ properly

3    discounted Dr. Fabella's opinion as to a lack of supportability on this basis.

4           Regarding consistency, the ALJ concluded that Dr. Fabella's assessment is not consistent

5    with the evidence in the record, including as to findings that Plaintiff had normal gait and station,

6    did not require an assistive device to ambulate, had grossly normal strength in her lower extremities,

7    and was able to climb stairs when using railings and had grossly normal balance.  (AR 44).  The

8    ALJ therefore found Dr. Fabella's findings were inconsistent with the ALJ's determination that

9    Plaintiff "could stand and walk for up to six hours and frequently climb stairs and ramps, balance,

10   and kneel, and occasionally climb ladders."  (*Id.*).  However, the Court finds the ALJ's bare recitals

11   to neutral findings of the record does not constitute substantial evidence of any material

12   inconsistency between Dr. Fabella's abnormal findings as to Plaintiff's limitations, such as her

13   assessments that she should avoid climbing ladders, work at heights, and was limited to stand and

14   walk for four hours.  *See Johnson v. Berryhill*, No. C17-5623-MAT, 2018 WL 3008879, at *4

15   (W.D. Wash. June 15, 2018) ("[T]he existence of other normal findings does not negate Dr.

16   Wingate's examination.").  Additionally, the ALJ failed to show how or why any of Dr. Fabella's

17   findings are inconsistent with any other medical source in the record, such as the other medical

18   opinions he found persuasive.  *Woods*, 32 F.4th at 792.  The ALJ did not acknowledge the

19   consistency of Dr. Fabella's findings with that of Dr. Mohan and Dr. Garcia as to findings that

20   Plaintiff could lift, carry, push and/or pull 20 pounds occasionally and ten pounds frequently, and

21   other normal findings.  Thus, the ALJ improperly discounted Dr. Fabella's opinion based on alleged

22   inconsistency with the record.

23          Because the ALJ properly found Dr. Fabella's opinion lacked supportability as he was

24   unable to review Plaintiff's medical records aside from diagnostic imaging, the ALJ permissibly

25   found the opinion not persuasive and not supported by substantial evidence.  In light of this, the

26   ALJ's failure to discuss the significance or relevance of discrete adverse findings in considering

27   supportability and his erroneous finding that Dr. Fabella's opinion was inconsistent with the record

28   constitutes harmless error.  *See Stringer v. Comm'r of Soc. Sec. Admin*, No. CV-22-00387-TUC-

JCH, 2024 WL 1340717, at *3 (D. Ariz. Mar. 28, 2024) ("even if the ALJ failed to address supportability, the error is harmless because the ALJ adequately addressed consistency") (citing *Joseph F. v. Kijakazi*, No. ED CV 22-00050-DFM, 2022 WL 17903079, at *6-7 (C.D. Cal. Oct. 11, 2022) (upholding ALJ's discounting of medical opinion where his consistency analysis was supported by substantial evidence and finding failure to address supportability factor harmless error; "[u]nder *Woods*, this alone suffices for the ALJ to conclude that each opinion was unpersuasive.")); *Tracy F. v. O'Malley*, No. 1:22-cv-00233-DCN-DKG, 2024 WL 1701572, at *3-4 (D. Idaho Apr. 19, 2024) (same); *Tara B. v. Comm'r Soc. Sec.*, No. 2023 WL 4946573, at *5 (W.D. Wash. Aug. 3, 2023) (same).

**B.    Whether Substantial Evidence Supports the ALJ's Physical RFC Limitation Regarding Reaching, Lifting, Pushing, Pulling, and Carrying**

*1.    Governing Authority*

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  (*Id.*).  However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination. … These limitations were entirely consistent with Dr. Koogler's limitation.").  Ultimately, a claimant's RFC is a matter for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Plaintiff argues the ALJ erred in assessing her RFC regarding reaching, lifting, pushing, pulling, and carrying because she failed to set forth any clear and convincing reasons for discounting Plaintiff's symptomology testimony.  (Doc. 18 at 17).  The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony, and resolving ambiguities.

---

[4] SSR 16-3p applies to disability applications heard by the agency on or after March 28,

1    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of pain or other

2    symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C.

3    § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms

4    alone are not enough to establish the existence of a physical or mental impairment or disability");

5    *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every

6    allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and

7    citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on*

8    *other grounds by* 20 C.F.R. § 404.1502(a).  Determining whether a claimant's testimony regarding

9    subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  *Id.* at

10   1112.  The ALJ must first determine if "the claimant has presented objective medical evidence of

11   an underlying impairment which could reasonably be expected to produce the pain or other

12   symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal

13   punctuation and citations omitted).  This does not require the claimant to show that his impairment

14   could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably

15   could have caused some degree of symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.

16   1996).

17        If the first step is met and there is no evidence of malingering, "the ALJ must provide

18   'specific, clear and convincing reasons for' rejecting the claimant's testimony."  *Treichler v.*

19   *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).  *See*

20   *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

21   credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings

22   that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

23   court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

24   arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

25        The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

26   _____

27   2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective
     symptom evaluation is not "an examination of an individual's character but an endeavor to

28   "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017
     WL 5180304, at *3.

1    claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

2    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

3    2023), *findings and recommendations adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see*

4    *Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023)

5    ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be

6    discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed.

7    Appx. 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead,

8    whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*,

9    53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his

10   work).

11       The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1)

12   ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior

13   inconsistent statements concerning the symptoms, and other testimony by the claimant that appears

14   less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

15   prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284.

16   In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

17   identified in SSR 16-3P. *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord

18   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

19
20       (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
         other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
21       type, dosage, effectiveness, and side effects of any medication an individual takes
         or has taken to alleviate pain or other symptoms; (5) Treatment, other than
22       medication, an individual receives or has received for relief of pain or other
         symptoms; (6) Any measures other than treatment an individual uses or has used to
23       relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15
         to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
24       concerning an individual's functional limitations and restrictions due to pain or
         other symptoms.
25

26   SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

27   supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

28   F.3d at 1039 (citations and internal quotation marks omitted).

1    The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

2    demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

3    Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

4    finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing

5    court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did

6    not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d

7    487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

8    "The fact that a claimant's testimony is not fully corroborated by the objective medical

9    findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan,* 260 F.3d

10   at 1049.  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity

11   and persistence of your pain or other symptoms or about the effect your symptoms have on your

12   ability solely because the objective medical evidence does not substantiate your statements.").

13   Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical

14   record, the ALJ must provide additional reasons for discounting the testimony.  *Burch v. Barnhart*,

15   400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and

16   identify the evidence that undermines the claimant's complaints – '[g]eneral findings are

17   insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

18   However, the medical evidence "is still a relevant factor in determining the severity of the

19   claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

20   The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence

21   from testimony that is "contradicted" by the medical records and concluded that contradictions with

22   the medical records, by themselves, are enough to meet the clear and convincing standard.

23   *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

24              2.       *Parties' Contentions*

25   Plaintiff argues the ALJ erred in rejecting her symptomology testimony regarding upper

26   extremity pain and limitation absent "clear and convincing" reasons "[d]espite the extensive

27   objective evidence supporting significant limitations on lifting, carrying and reaching due to severe

28   pain and abnormalities in testing, imaging and examination findings[.]" (Doc. 18 at 17).  Plaintiff

1    contends the ALJ failed to explain the significance of "normal" findings regarding gait, balance,

2    muscle bulk and tone, and motor and sensory function when those issues were not testified to be at

3    issue.  (*Id.* at 18, 19).  Plaintiff argues the ALJ mischaracterized the evidence regarding her range

4    of motion of the back, neck, and bilateral upper and lower extremities as "normal" in failing to

5    discuss abnormal findings in the record.  (*Id.* at 19).  Plaintiff contends the ALJ's finding that she

6    was "in no acute distress" is "not a clear and convincing reason to reject her symptomology

7    evidence."  (*Id.* at 20).  Plaintiff contends the ALJ failed to explain how her ADLs "translates into

8    an ability to sustain substantial gainful activity[.]"  (*Id.*).

9        Defendant contends that "[a]lthough the ALJ did not fully credit Plaintiff's allegations, she

10   nevertheless concluded that Plaintiff's impairments resulted in significant work-related

11   limitations."  (Doc. 21 at 22).  Defendant contends the ALJ's finding as to Plaintiff's physical RFC

12   limitation is supported by substantial evidence considering her review of Plaintiff's allegations,

13   medical evidence, ADLs, and medical opinion evidence.  (*Id.*).

14           *3.    Analysis*

15       The ALJ found that Plaintiff's severe medical impairments—osteoarthritis of both knees,

16   chondromalacia patella, migraine headaches, asthma, and multilevel degenerative disc disease of

17   the spine—significantly limit her from performing basic work activities.  (AR 38).  The ALJ

18   summarized Plaintiff's subjective symptom testimony from the hearing:

19           [Plaintiff] reported pain in her back and neck related to an old injury.  She endorsed
             pain in her whole body, including her joint, knees, neck, and back.  She described
20           it as sharp pains, worse with repetitive motions, including lifting and some personal
             care activities, and long driving.  Moreover, she noted that she did her activities
21           more slowly.  She estimated that she could walk for thirty minutes at one time,
             stand for two to three hours at one time, and sit for thirty minutes at one time.  By
22           the hearing, these estimates had changed and she testified that she could stand for
             ten minutes, walk for five minutes, and sit for up to twenty minutes.  She also
23           testified that she had problems lifting, and she could only sometimes carry a gallon
             of milk.
24

25   (AR 41-42) (citations omitted).  After finding that Plaintiff's impairments could reasonably be

26   expected to cause some of her alleged symptoms, the ALJ concluded that Plaintiff's statements

27   concerning the intensity, persistence, and limiting effects of her symptoms are not entirely

28   consistent with the record.  (AR 42); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely

                                             21

1  include this [boilerplate] statement in their written findings as an introduction ... before

2  [identifying] what parts of the claimant's testimony were not credible and why.").

3       Here, in discounting Plaintiff's testimony, the ALJ relied on the following: (1) Plaintiff's

4  statements were inconsistent with the objective medical evidence and (2) Plaintiff's ADLs were

5  consistent with the assessed RFC.  (AR 43).

6                    (a)      Plaintiff's purported inconsistent statements are not a clear and

7                             convincing reason to reject her symptomology testimony

8       The ALJ recited record findings to show Plaintiff's symptomology testimony as to her upper

9  body physical pain were inconsistent with the record.  (AR 42) ("[H]er neck range of motion

10 returned to normal"; [she] maintained normal ranges of motion in her lower back without

11 tenderness"; [she] maintained good ranges of motion and strength in her shoulders"; "despite

12 reported wrist pain, [she] maintained normal ranges of motion in her bilateral wrists"; "[she] would

13 manage her neck pain with Tylenol"; and "[a]lthough she continued to report mild pain in her mid-

14 back, she was comfortable without medications[.]"); (AR 43) ("[Plaintiff] had grossly normal

15 ranges of motion in her back, neck, and bilateral upper and lower extremities"; "her hands and

16 fingers also had normal ranges of motion and she had good hand coordination"; "[s]he was also

17 able to make a fist"; "[she] had normal muscle bulk and tone with grossly normal strength"; "[f]or

18 example, during 2017, [she] reported that she was able to lift two grocery bags and sit or stoop

19 without problem"; "[she] also maintained normal motor and sensory function"; "[o]verall, [she]

20 regularly appeared to be in no acute distress").  The ALJ considered these findings "consistent with

21 her testimony that her medications helped lessen her physical pain, but it would not go away so she

22 would be limited to the above-described [RFC]."  (AR 43).

23      The ALJ also referenced records that substantiate Plaintiff's alleged limitations as to upper

24 body pain.  (AR 42) ("[Plaintiff's] March 2017 cervical spine showed multilevel degenerative

25 changes, including partial straightening of the normal lordotic curve, multilevel endplate

26 spondylosis, and multilevel disc space narrowing and osseous foraminal stenosis"; "[she] described

27 constant pain in her neck and back"; "she suffered muscle spasms and was positive for tenderness";

28 "[a]ctivities including bending, lifting, and sitting long periods aggravated her pain"; "she was

1   positive for stiffness and a limited range of motion in her neck"; "[she] reported that she had

2   increased back pain when she lifted above her shoulder"; "repetitive movements with her arms

3   exacerbated her neck pain"; and "[her] neck pain radiated into her left trapezius and shoulder").

4       The ALJ noted that Plaintiff "regularly suffered back, neck, and knee pain, which worsened

5   with movements including lifting and prolonged standing, walking, or sitting" and therefore the

6   ALJ limited Plaintiff to "light exertional work[,]" that she "can only occasionally climb ladders,

7   ropes, or scaffolds, bend, and stoop[,]" and "can only occasionally push and pull or reach above

8   shoulder level bilaterally." (AR 41, 43).  The ALJ noted that to "avoid exacerbating her neck and

9   shoulder pain, [Plaintiff] should only occasionally reach overhead or push and/or pull bilaterally."

10  (AR 43).  In making the assessment, the ALJ credits generally Plaintiff's alleged "neck and

11  shoulder pain" and cites to various findings in support, including that Plaintiff had "grossly normal

12  strength" and "ranges of motion" in "her back, neck, and bilateral upper" extremities and "hands

13  and fingers" that she reported she "was able to lift two grocery bags[.]" (AR 43).  However, the

14  ALJ failed to show Plaintiff's allegations that she can only sometimes carry a gallon of milk

15  "because it'll slip from [her] hands … [and] hurt [her] fingers all the way to [her] elbow" (AR 66),

16  that using her arms and hands "hurts" in "brushing [her] hair" and "washing [herself]" (AR 67) and

17  can only be used for about "five to ten minutes" at a time" (AR 68), or that she has pain in her

18  "whole body, in [her] joints and … neck, … back, [and] low back" are somehow contradicted

19  because records show that she "regularly appeared to be in no acute distress" or had "grossly

20  normal" ranges of motion and strength and "could make a fist[.]"  Indeed, courts have rejected an

21  ALJ's reliance on isolated statements in the medical record of acute distress while ignoring

22  statements in those same notes describing chronic pain.  *See Hernandez v. Comm'r of Soc. Sec.*,

23  No. 1-22-cv-00188-CDB, 2024 WL 3470855, at *5 (E.D. Cal. July 18, 2024) (citing cases).

24      The ALJ failed to show or explain why these general findings contradict Plaintiff's pain

25  testimony, or otherwise explain the relevance or significance of such findings.  *Greger v. Barnhart*,

26  464 F.3d 968, 972 (9th Cir. 2006).  Thus, the ALJ failed to offer a clear and convincing reason to

27  discount Plaintiff's credibility on this basis.

28

1          (b)     <u>Plaintiff's activities of daily living (ADL) do not provide a clear and</u>

2                  <u>convincing reason to reject her symptomology testimony.</u>

3          An ALJ may reject a claimant's subjective symptom testimony if it is inconsistent with the

4    claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1039. There are two grounds on

5    which an ALJ may use a claimant's daily activities to question a claimant's credibility as to her

6    subjective symptoms: (1) when daily activities demonstrate the claimant has transferable work

7    skills, and (2) when daily activities contradict the claimant's testimony as to the degree of functional

8    limitation. *Orn*, 495 F.3d at 639. However, "disability claimants should not be penalized for

9    attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see*

10   *Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly

11   incapacitated to be eligible for benefits, and many home activities may not be easily transferable to

12   a work environment where it might be impossible to rest periodically or take medication."). "The

13   mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping,

14   driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]"

15   *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan*, 260 F.3d at 1050).

16   Regarding mental health issues, "[c]ycles of improvement and debilitating symptoms are a common

17   occurrence," and an ALJ errs by "pick[ing] out a few isolated instances of improvement over a

18   period of months or years and [] treat[ing] them as a basis for concluding a claimant is capable of

19   working." *Garrison*, 759 F.3d at 1017.

20         Here, the ALJ found that Plaintiff's ADLs are consistent with her RFC. (AR 43). The ALJ

21   noted that Plaintiff "was able to do her own cooking and cleaning" and "drive, shop, and perform

22   personal care activities" but "would do such activities more slowly" and "she preferred to be

23   independent and no one helped her around the house[.]" (*Id.*). The ALJ noted that Plaintiff's

24   daughter "would help her lift heavier groceries[.]" (*Id.*). However, the mere fact that Plaintiff was

25   able to carry on with these types of activities of daily living despite doing them more slowly does

26   not detract from the credibility of her testimony. *Webb*, 433 F.3d at 688. Further, in identifying

27   only the testimony she found consistent with the RFC, the ALJ failed to adequately explain how

28   Plaintiff's described activities of daily living conflict with her alleged limitations or demonstrate

1   her ability to work.  *See, e.g., Wilson v. Comm'r of Soc. Sec. Admin*., 303 Fed. Appx. 565, 566 (9th

2   Cir. 2008) (finding a plaintiff's occasional driving does not render him able to work); *Vertigan*, 260

3   F.3d at 1050 (finding "only a scintilla of evidence in the record to support the ALJ's finding that

4   [plaintiff] lacked credibility about her pain and physical limitations" where the ALJ relied on

5   Plaintiff's ability to go "grocery shopping with assistance, walk approximately an hour in the malls,

6   get together with her friends, play cards, swim, watch television, ... read.... [and participate in]

7   physical therapy for six months and exercise[ ] at home."); *Costa v. Berryhill*, 700 Fed. Appx. 651,

8   653 (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not necessarily equate

9   with an ability to work.").  Thus, the Court cannot ascertain which of Plaintiff's symptom testimony

10  the ALJ properly rejected based on the ADL evidence, or why.  *See, e.g., Isis A. v. Saul*, No.

11  18cv01728-W-MSB, 2019 WL 3554969, at *6 (S.D. Cal. Aug. 5, 2019) ("Because the ALJ did not

12  identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain

13  which of Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.")

14  (citing *inter alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

15      For these reasons, the ALJ did not identify a specific, clear, and convincing reason for

16  discrediting Plaintiff's symptom testimony when she did not explain how those ADLs either

17  contradicted Plaintiff's testimony or equaled transferable work skills.

18  **C.**     **Whether the ALJ Erred in Failing to Identify and Resolve an Apparent**

19          **Conflict Between the DOT and VE Testimony per SSR 00-4p**

20          *1.     Governing Authority*

21      The ALJ bears the burden of making the necessary inquiry of the vocational expert ("VE").

22  *See* SSR 00-4p; *see Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) ("SSR 00–4p

23  unambiguously provides that '[w]hen a [VE] ... provides evidence about the requirements of a job

24  or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict

25  between that [vocational expert] ... evidence and information provided in the [*Dictionary of*

26  *Occupational Titles* (DOT)].' SSR 00–4p further provides that the adjudicator '*will* ask' the [VE]

27  "if the evidence he or she has provided" is consistent with the [DOT] and obtain a reasonable

28  explanation for any apparent conflict.") (quoting SSR 00–4p at *4) (emphasis original).  "Although

1    evidence provided by a vocational expert 'generally should be consistent' with the [DOT],

2    '[n]either the [DOT] nor the [VE] ... evidence automatically 'trumps' when there is a conflict.'

3    *Massachi*, 486 F.3d at 1153.  "Thus, the ALJ must first determine whether a conflict exists.  If it

4    does, the ALJ must then determine whether the [VE's] explanation for the conflict is reasonable

5    and whether a basis exists for relying on the expert rather than the [DOT]."  (*Id.*).

6                            *2.       Parties' Contentions*

7            Plaintiff argues the ALJ erred in solely determining that the VE's limitation to "occasional"

8    overhead reaching would not erode the occupational role of housekeeper "without explanation and

9    without specifically asking the VE how this [role], that rather logically requires 'frequent' reaching

10   would allow for only 'occasional' overhead reaching."  (Doc. 18 at 22).  Plaintiff contends the ALJ

11   failed to identify this conflict and "make it clear" that she "had considered the reaching limitation

12   and had reduced the numbers accordingly."  (*Id.*)  Plaintiff argues had "the PRW of Housekeeper

13   been eliminated based on [Plaintiff's] RFC, the medical vocational rules would direct a finding of

14   'disabled' at step [f]ive, at either a light or sedentary RFC, given [Plaintiff's] advanced age and

15   lack of transferrable skills."  (*Id.* at 24).

16           Defendant contends there is no apparent or obvious DOT conflict.   (Doc. 21 at 30).

17   Defendant argues that Plaintiff's contention—that "in her own interpretation of the demands of the

18   occupation of [h]ousekeeper, overhead reaching is a 'common and obvious part' of the

19   occupation"—is addressed by *Todd v. Saul*, 822 Fed. Appx. 613 (9th Cir. 2020), which shows

20   "there is no apparent or obvious conflict between a limitation to occasional overhead reaching and

21   the requirements of Plaintiff's past work."  (*Id.* at 30-31).

22                            *3.       Analysis*

23           Here, the ALJ stated that the VE "did not specify any portions of her testimony that

24   contradicted with the [DOT]" and the ALJ therefore "accepts her testimony in accordance with

25   SSR 00-4p."  (AR 46).  Because the ALJ determined that no conflict exists between the VE's

26   testimony and the DOT, the ALJ properly relied on that testimony in making her decision.  Further,

27   given the Ninth Circuit's unpublished decision in *Todd*—holding that "[w]hile the 'cleaner

28   housekeeping' occupation may require frequent reaching, it does not apparently and obviously

1  require frequent overhead reaching"—the Court similarly finds here that "[t]here is no apparent

2  and obvious conflict between the testimony from … [the VE] that a person with [Plaintiff's] RFC

3  could perform the 'cleaner housekeeping' job, which the ALJ accepted, and the [DOT's] general

4  definition of duties." *Todd*, 822 Fed. Appx. at 616.  Thus, the ALJ did not err in relying on the

5  VE's testimony pursuant to SSR 00-4p.

6         The Ninth Circuit addressed this same issue in its published decision in *Gutierrez*, in which

7  the VE testified an individual with above-shoulder reaching limitations could perform the job

8  requirements of cashier, which required frequent reaching according to the DOT. *Gutierrez v.*

9  *Colvin*, 844 F.3d 804, 807–08 (9th Cir. 2016).  The court noted that not all jobs requiring frequent

10 reaching necessarily require reaching overhead, and that in the case of a cashier it was unlikely and

11 unforeseeable that it would require reaching overhead.  *Id.*  Accordingly, the court found no

12 apparent conflict between the VE's testimony and the DOT.

13        Plaintiff argues that *Gutierrez* is distinguishable because, unlike the cashier jobs at issue in

14 *Gutierrez*, the requirement of overhead reaching is a "'common and obvious' part the job of

15 Housekeeper, DOT 323.687.014" and that the DOT for housekeeper expressly provides for

16 "frequent" reaching.  (Doc. 18 at 19).  However, for the same reasons expressed by the panel in

17 *Todd* (*supra*), the Court here finds that the DOT for housekeeper does not apparently and obviously

18 require frequent "overhead" reaching.

19        **D.**     **Whether the ALJ Erred in Failing to Find MDIs of Mental Impairments to be**

20                **Not "Severe" Impairments at Step Two**

21             *1.     Governing Authority*

22        "In step two of the disability determination, an ALJ must determine whether the claimant

23 has a medically severe impairment or combination of impairments." *Keyser v. Comm'r Soc. Sec.*

24 *Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  A claimant has a severe impairment when the evidence

25 establishes that an impairment has more than a minimal effect on an individual's ability to perform

26 basic work activities. *Webb*, 433 F.3d at 686; *Smolen*, 80 F.3d at 1290; 20 C.F.R. §§ 404.1522(a),

27 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly

28 limit your physical or mental ability to do basic work activities.").  The regulations define "basic

work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting.  20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  *Webb*, 433 F.3d at 687 (citing SSR 85-28).  Moreover, "once the ALJ finds the claimant has at least one severe impairment at Step Two, the ALJ must consider all the claimant's impairments when formulating the claimant's RFC, including those impairments the ALJ determined to be non-severe."  *Kim R.S. v. Kijakazi*, No., 2022 WL 1405429, at *3 (C.D. Cal. May 4, 2022) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)).  "Thus, even if an ALJ erred by finding a particular impairment to be non-severe at Step Two, the error is harmless so long as the limitations of that impairment are considered when formulating the claimant's RFC."  *Id.* (citing cases).

Substantial evidence supports an ALJ's finding that a claimant's mental impairments are non-severe if (1) she properly considered the claimant's mental health records, (2) she properly considered the Paragraph B criteria (*see supra* p. 4, n.3), and (3) the record supports her findings regarding the non-severity.  *See Woods*, 32 F.4th at 794.

In rating the degree of limitation in each of the four functional areas, an ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  If the ALJ rates the claimant's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  Legal error occurs when an ALJ neglects to document her application of the paragraph B criteria or fails to include a specific finding as to the degree of limitation in any of the four functional areas.

1    *Lee v. Kijakazi*, No. 3:20-cv-01596-H-BGS, 2022 WL 913057, at *4 (S.D. Cal. Mar. 29, 2022)

2    (citing *Keyser*, 648 F.3d at 726).

3                            *2.      Parties' Contentions*

4           Plaintiff argues the ALJ erred in failing to find her mental MDIs of PTSD and major

5    depressive disorder are "severe" impairments at step two because substantial evidence shows these

6    impairments have a "more than minimal" effect on her ability to perform work activity.  (Doc. 18

7    at 24-25).  Plaintiff contends that the ALJ failed to account for any psychological limitations

8    resulting from the mental MDIs found throughout the record, including findings of her "chronic"

9    PTSD, generalized anxiety disorder, and persistent, "severe," "recurrent" depression, and otherwise

10   consider her mental health testimony.  (*Id.*).  Plaintiff argues given "there is no treating, examining

11   or even reviewing opinion regarding the severity or limitations imposed by [Plaintiff's] psychiatric

12   MDIs[,]" the "ALJ had a duty to develop the record" and send Plaintiff to a psychiatric consultative

13   examination ("CE") or "to contact her treating physicians for an assessment of her psychiatric

14   limitations" instead of solely determining these impairments were "not severe" and only had a

15   "mild" impact on her ability to sustain work activity, and the ALJ otherwise failed this duty.  (*Id.*

16   at 27).

17          Defendant contends substantial evidence supports the ALJ's evaluation off Plaintiff's

18   mental impairments because the record was sufficient to evaluate the impairments and the ALJ

19   therefore adequately considered the non-severe mental impairments at subsequent steps in the

20   sequential evaluation.  (Doc. 21 at 22).  Defendant contends that the ALJ properly considered the

21   "paragraph B" criteria in finding Plaintiff's mental impairments were non-severe as no psychiatric-

22   based abnormalities are documented in the record until October 2018—"well over a year after the

23   alleged onset date"—and she thereafter received treatment that rendered "normal findings" aside

24   "some abnormalities" and "incidents" as documented in the record.  (*Id.* at 18).  Defendant contends

25   Plaintiff's   ADLs   also   support   the   ALJ's   finding   given   Plaintiff   "lives

26   alone[,] … does her own cooking and cleaning" and "own activities … without assistance" and all

27   limitations to performing ADLs and working part-time are attributed to "her physical rather than

28   mental impairments."  (*Id.* at 19).

1          *3.      Analysis*

2          As noted *supra* (Section I.A), the ALJ found that Plaintiff's PTSD, anxiety disorder, and

3    major depressive disorder, "considered singly and in combination, do not cause more than minimal

4    limitation in Plaintiff's ability to perform basic mental work activities and are therefore non-

5    severe." (AR 38-39). In making this finding, the ALJ found these mental impairments did not

6    satisfy the "paragraph B" criteria as she found only mild limitations in each of the four broad areas

7    of mental functioning and "the evidence does not otherwise indicate that there is more than a

8    minimal limitation in [Plaintiff's] ability to do basic work activities." (AR 39-40). The ALJ then

9    noted that the RFC assessment she made at Step Three "reflects the degree of limitation [she] has

10   found in the 'paragraph B' mental function analysis." (AR 40).

11          As a preliminary matter, "if a claimant fails to raise an impairment at the administrative

12   level, the ALJ is not affirmatively obligated to consider that impairment." *Kim R.S.*, 2022 WL

13   1405429, at *4 (citing *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (finding ALJ's

14   conclusion that claimant's depression was not a severe impairment to be supported by substantial

15   evidence because claimant did not contend that her depression was a severe impairment at the

16   administrative level). Here, Defendant correctly notes that Plaintiff did not address these mental

17   impairments during the administrative hearing. (Doc. 21 at 20); *see* (AR 54-73). Nor did Plaintiff

18   list these mental impairments on her requests for disability benefits and SSI and reconsideration.

19   (AR 166-67, 170, 174-75). Accordingly, the ALJ did not err in finding Plaintiff's mental

20   impairments to be non-severe because the ALJ was not obligated to consider the impairment under

21   the present circumstances. *Kim R.S.*, 2022 WL 1405429, at *4.

22          Plaintiff argues the ALJ erred in finding Plaintiff's mental impairments to be non-severe

23   because the ALJ failed to account for any resulting limitations "as diagnosed by treating physicians

24   and providers[.]" (Doc. 18 at 25). An ALJ, however, is entitled to find a mental impairment to be

25   non-severe even if a plaintiff has received a formal diagnosis for that impairment. *See Jose S. v.*

26   *Kijakazi*, Case No. 2:20-cv-09561-GJS, 2022 WL 837416, at *2 (C.D. Cal. Mar. 21, 2022) ("[A]

27   diagnosis alone does not establish disability."); *Draiman v. Berryhill*, No. CV 17-747-KS, 2018

28   WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (finding that claimant's "diagnoses of Major

1    Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has

2    a severe mental impairment" at Step Two).  The key inquiry is thus not whether the claimant has a

3    diagnosis for a mental impairment, but rather whether there are findings by the medical sources to

4    support that the mental impairment is "severe" under the paragraph B criteria.  *See David F.M. v.*

5    *Saul*, No. 5:20-cv-01362-AFM, 2021 WL 2646905, at *3 (C.D. Cal. June 25, 2021).  Here, although

6    Plaintiff notes records from a behavioral health clinician characterizing her depression as "severe"

7    and her PTSD as "chronic" (Doc. 18 at 20), Plaintiff does not explain why the diagnoses she cites

8    to establish that her PTSD, anxiety, and depression are "severe" under the paragraph B criteria, nor

9    does she identify additional limitations that should have been considered by the ALJ in making her

10   determination.  Further, the ALJ provided an adequate explanation for each functional area rating

11   she gave under the paragraph B criteria to support her finding that Plaintiff's mental impairments

12   were not severe.  (AR 39).

13          Specifically, the ALJ cited to Plaintiff's mental health records showing she was regularly

14   negative for confusion, presented with intact cognitive function, and was able to make sensible

15   decisions with good judgment and reasoning, and also properly considered Plaintiff's ability to

16   perform necessary household activities such as cleaning in finding that Plaintiff's mental

17   impairments did not impose more than mild limitations on her functioning.  This was a sufficient

18   foundation on which the ALJ reasonably found Plaintiff's mental impairments to be non-severe

19   despite her diagnoses of depression, PTSD, and anxiety, and her findings are supported by

20   substantial evidence.  *Kim R. S.*, 2022 WL 1405429, at *7 (citing *inter alia Woods*, 32 F.4th at 794).

21          Additionally, substantial evidence supports an ALJ's finding that an impairment is not

22   severe when medical records show that the claimant's impairment has been controlled by treatment.

23   *See, e.g., Huff v. Astrue*, 275 F. Appx. 713, 717 (9th Cir. 2008) (finding ALJ did not err in finding

24   claimant's depression to be non-severe because the ALJ reasonably relied on physician's finding

25   that claimant's depression had improved with treatment); *Kenneth K. v. Berryhill*, No. 3:17-cv-

26   01271-JR, 2018 WL 6991256, at *4 (D. Or. Dec. 19, 2018) (finding ALJ's determination that

27   claimant's diabetes was not a severe impairment was supported by substantial evidence because

28   medical records showed her diabetes was "controlled"), *report and recommendation adopted by*

1   2019 WL 165700 (D. Or. Jan. 10, 2019).  Here, the ALJ pointed to evidence in the record showing

2   that though Plaintiff "often presented as depressed or sad" and "anxious[,] … she progressed with

3   treatment" and noted that "her mood was improving."  (AR 39).  Such evidence of improvement

4   constitutes substantial evidence to support the ALJ's finding that Plaintiff's alleged depression and

5   anxiety were not severe.  *Kim R.S.*, 2022 WL 1405429, at *4.  Accordingly, the ALJ reasonably

6   found Plaintiff's mental impairments to be non-severe despite her diagnoses of PTSD, depression,

7   and anxiety, and her findings are supported by substantial evidence.

8                                    *        *        *        *        *

9           In sum, the ALJ failed to include work-related limitations in the RFC consistent with the

10  nature and intensity of Plaintiff's alleged limitations as to the ability to reach, lift, push, pull, or

11  carry in improperly rejecting her subjective symptomology testimony.  While an ALJ's error may

12  be harmless where she provides valid reasons for disbelieving a claimant's testimony in addition to

13  invalid reasons (*Molina*, 674 F.3d at 1115 (citing cases)), here, the ALJ provided no valid reasons

14  for rejecting Plaintiff's symptomology testimony.  Accordingly, the error is not harmless.

15          **E.      Remedy**

16          Plaintiff seeks to remand for payment of benefits or alternatively for a new hearing.  (Doc.

17  18 at 27).  Defendant contends that should the Court find error in the ALJ's analysis, the Court

18  should remand for further proceedings.  (Doc. 21 at 31).  "The decision whether to remand for

19  further proceedings or simply to award benefits is within the discretion of court."  *Trevizo*, 871

20  F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  "Remand for further

21  administrative proceedings is appropriate if enhancement of the record would be useful."  *Benecke*

22  *v. Barnhart*, 379 F.3d 587, 593 (emphasis omitted) (9th Cir. 2004).

23          In this case, the ALJ erred by failing to offer clear and convincing reasons to reject

24  Plaintiff's health symptomology testimony, and failing to sufficiently explain how Plaintiff's

25  activities of daily living undermine her alleged limitations.  Given these errors, the Court concludes

26  that remand for further proceedings is warranted because additional administrative proceedings

27  may remedy the deficiencies in the ALJ's decision noted herein.

28  ///

IV.    **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in failing to apply the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 18) is **GRANTED**;

2.    The decision of the ALJ (Doc. 12) is **REVERSED**;

3.    This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and

4.    The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Maria Concepcion Nieto de Gianini and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    __**April 2, 2025**__                    _____

UNITED STATES MAGISTRATE JUDGE